THE LAW OFFICE OF GEORGETTE A.
YAINDL, LLLC
GEORGETTE ANNE YAINDL  #8940
P.O. Box 307
Kailua-Kona, Hawai`i 96745-0307
Telephone No. (808) 224-0219
Fax No. (808) 377-8869
Email to gyaindl@gyattorney.com

Attorney for Plaintiffs
ALTON K. NOSAKA; ERIC M.
SAKAZAKI; GORDON K. LESLIE;
RACHEL KRYGIER; and RICHARD
OKUDA, JR., each individually and on
behalf of all others similarly situated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALTON K. NOSAKA; ERIC M. SAKAZAKI; GORDON K. LESLIE; RACHEL KRYGIER; and RICHARD OKUDA, JR., each individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | Civil No._____<br><br>CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF; SUMMONS |
| Plaintiffs, | ) ) | |
| v. | ) ) | Labor Management Relations Act of 1947, as amended (LMRA) |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; and EELIZABETHABETH HO, in her official capacity as Administrator of Local 646, AFSCME, United Public Workers; and DOE DEFENDANTS, 1-19, Inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) | (29 U.S.C. §§ 141-197)<br><br>Labor Management Reporting Disclosure Act, of 1959, as amended (LMRDA)<br>(29 U.S.C. §§ 401-53) |
| Defendants. | ) ) | |
| _____ | | |

## CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs ALTON K. NOSAKA; ERIC M. SAKAZUKI; GORDON K. LESLIE; RACHEL KRYGIER; and RICHARD OKUDA, JR., (collectively, "Plaintiffs"), by and through their attorney, Law Office of Georgette A. Yaindl, LLLC, bring this Complaint against Defendants AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO ("AFSCME"); ELIZABETH HO in her Official Capacity as AFSCME Administrator; and DOE DEFENDANTS 1-19, Inclusive, and allege and aver as follows:

**At all times material herein**:

**Parties**

1.      Defendant AFSCME has been and is a labor organization headquartered in Washington, D.C.

2.      Defendant ELIZABETH HO has been and is the AFSCME's Administrator over United Public Workers, AFSCME, Local 646, AFL-CIO ("UPW"), dba Local 646, AFSCME, United Public Workers, out of headquarters located in Honolulu, Hawai`i.  Based on information and belief, Ms. Ho (or "the Administrator") is domiciled in Honolulu County, State of Hawai`i.

3.      Plaintiff ALTON K. NOSAKA continually has been domiciled in Hawai`i County, State of Hawai`i.

4.      Plaintiff ERIC M. SAKAZAKI continually has been domiciled in

Kaua`i County, State of Hawai`i.

5.    Plaintiff GORDON K. LINDSEY continually has been domiciled in Honolulu County, State of Hawai`i.

6.    Plaintiff RACHEL KRYGIER continually has been domiciled in Hawai`i County, State of Hawai`i.

7.    Plaintiff RICHARD OKUDA, JR. continually has been domiciled in Maui County, State of Hawai`i.

8.    Plaintiffs are ignorant of the true names and capacities of each Defendant sued as a Doe, and therefore sue said Defendants and each of them by the fictitious names of Doe Defendants 1-19, Inclusive. Each Defendant named as a Doe was in some specific manner responsible for the injuries complained of and the acts and omissions alleged herein.  Upon discovery and new information, Plaintiffs reserve the right to amend this Complaint by naming and stating claims against one or more such Doe Defendant(s).

9.    All of the acts and failures to act alleged herein duly were performed by and are attributable to all Defendant parties, each acting as a principal, successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of others, except as Plaintiffs specifically allege otherwise.  Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the

unlawful acts and omissions by other Defendants complained of hereby.  Whenever and wherever in this Complaint reference is made to any act by a Defendant or Defendants, such allegations and reference also is deemed to mean the acts and failures to act of each Defendant acting individually, jointly and/or severally.

**Jurisdiction and Venue**

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201, 2202 (declaratory relief); 29 U.S.C. § 185(b - c) (re LMRA claims); 29 U.S.C. § 412 and 29 U.S.C. § 464(a) (re LMRDA claims).

11.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) (judicial district where acts and omissions complained of occurred); 29 U.S.C. § 185(a) (LMRA claims); and 29 U.S.C. § 464(b)(2) (LMRDA claims).

**Background Facts**

Defendant AFSCME

12.    AFSCME is an international labor organization representing workers in the public service and health care sectors.  It is an affiliate of the American Federation of Labor – Congress of Industrial Organizations ("AFL-CIO").

13.    AFSCME is comprised of approximately 3,400 local unions and 58 councils and affiliates, and operates in 46 states, the District of Columbia and Puerto Rico, with a combined membership of approximately 1.3 million workers.

14.     AFSCME coordinates national advocacy actions on major issues such as privatization, taxation and health.  AFSCME also provides resources to councils and local unions for organizing, collective bargaining, political action and education, and administers members-only benefits.

15.     AFSCME reported $134,389,847 in "net assets or fund balances" and $152,890,992.00 in "revenue from member dues and assessments" in its 2018 federal tax return.

16.     AFSCME is governed by the AFSCME International Constitution (2020).

17.     AFSCME is subject to the Labor Management Relations Act of 1947, as amended ("LMRDA"), codified at 29 U.S.C. §§ 141-197, because it is a "labor organization" as that term is defined at 29 U.S.C § 152(5) and engaged in "commerce" as that term is defined at 29 U.S.C § 152(6).

18.     AFSCME is subject to the Labor Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), codified at 29 U.S.C. §§ 401-531, because it is a "labor organization" as that term is defined at 29 U.S.C § 402(i) and engaged in "commerce" as that term is defined at 29 U.S.C § 402(a).

19.     Lee Saunders has been and is AFSCME President.

Defendant ELIZABETH Ho

20.     Ms. Ho is and has been an agent of AFSCME since 1982.  Ms. Ho first was employed in the position of Union Agent for Hawaii Government Employees

5

Association/AFSCME and in 1988 was hired in the position of AFSCME Project

Staff.  In 1992, Ms. Ho was promoted to the position of International Union

Representative. Since 1998, Ms. Ho has occupied the position of International

Union Area Field Services Director for Hawai`i.

21.    In her capacity as Hawai`i Area Field Services Director, Ms. Ho is

authorized to be present and participate in all meetings conducted by AFSCME's four

local union and affiliate members operating in the state of Hawai`i.

The Administratorship

22.    On May 1, 2020, AFSCME President Saunders placed United Public

Workers, AFSCME, Local 646, AFL-CIO ("UPW") under administratorship

pursuant Article IX, section 37 of the International Constitution (16), following

publication of the AFSCME Judicial Panel and International Executive Board

decision in Case No. 20-23 (Nosaka v. Nakanelua, Wataru, Aqui, Uwaine,

Kamakeeaina and Endo), dated April 30, 2021, whereupon, in part, then UPW State

Director, Dayton Nakanelua, and then UPW Administrator of Fiscal and Member

Services, Jeanne Endo, were adjudged guilty of violating Article X, section 2(b) of

the International Constitution ("Misappropriation, embezzlement, or improper or

illegal use of union funds") and ordered terminated from employment with UPW.

23.    Section 45 of the International Constitution authorizes the AFSCME

president to take charge of the affairs and business of a subordinate body placed

under administratorship and to appoint an administrator for such purpose.

24.    On or before May 1, 2020, AFSCME President Saunders appointed Ms. Ho the Administrator of AFSCME's administratorship over United Public Workers, AFSCME, Local 646, AFL-CIO ("the Administratorship").

25.    Article IX, section 45 of the International Constitution provides that the actions of an administrator are subject to the direction, instructions and approval only of the AFSCME president.

26.    AFSCME previously had placed UPW under administratorship during 2002 – 2004 following conviction of then UPW State Director Gary Rodrigues on 50 counts of "theft of honest services" from UPW and its members, and conspiracy, embezzlement, money laundering, and health care fraud charges. (09 and 12). AFSCME administered an election of UPW officers in 2003 at which time Mr. Nakanelua was elected State Director.

27.    The Administratorship is a "trusteeship" as that term is defined at 29 U.S.C. § 402(h) and as such, must be administered in accordance with the International Constitution.

28.    As of the date stated below, the Administratorship has not been terminated.

UPW

29.    UPW is a labor organization founded in Hilo, Hawai`i in 1944 by a small group of roads workers over matters including per diem pay and lack of work.

30.    Today, UPW represents more than13,000 members together residing and working throughout the main Hawaiian islands of Hawai`i, Maui, Moloka'i, Lana'i, Oahu, and Kaua`i.  UPW is comprised of five divisions, including the Hawaii, Maui, Oahu, and Kaua`i Divisions that service non-supervisory state, county, and city employees covered by collective bargaining agreements between UPW and State and County employers, and the Private Sector Division that services private sector non-supervisory health care employees covered by collective bargaining agreements between UPW and private employers.

31.    As of the date stated below, the UPW Oahu Division has approximately 7,000 members. The Maui and Hawai`i Divisions each have approximately 2,000 members. The Kaua`i and Private Sector Divisions each have approximately 1,000 members.

32.    UPW is a chartered subordinate local union member of AFSCME.

33.    In the Year Ending 2018, UPW reported in its Consolidated Statement of Financial Position revenues including $1,802,526.00 in "AFSCME per capita dues" and $7,764,139.00 in "Membership Dues." (21).  In its Tax Year 2018 IRS Form 990 filing, UPW reported the amount of  $1,802,529.00 as "payments to affiliates" and ending the year with "net assets and fund balances" totaling $9,418,443.00.

34.    UPW's governing documents include its Constitution, the Private

Sector Division Bylaws, and the International Constitution.

35.     UPW is subject to the LMRA (29 U.S.C. §§ 141-197) because it is a "labor organization" as that term is defined at 29 U.S.C § 152(5) and engaged in "commerce" as that term is defined at 29 U.S.C § 152(6).

36.     UPW is subject to the LMRDA (29 U.S.C. §§ 401-531) because it is a "labor organization" as that term is defined at 29 U.S.C § 402(i) and engaged in "commerce" as that term is defined at 29 U.S.C § 402(a).

<u>The Historic Election</u>

37.     By letter dated July 28, 2021, AFSCME President Saunders informed the Administrator that UPW's Constitution was infirm because it did not provide for a one member-one vote direct election of UPW's statewide officers (specifically, the UPW State Director, UPW President, and UPW Secretary-Treasurer) as required by the International Constitution and federal law, and directed, "for purposes of lifting the Administratorship and in every UPW State Officer elections thereafter, nominations and elections must be conducted among the membership as a whole."

38.     During their respective tenures as UPW State Director, Mr.'s Nakanelua and Rodrigues each, respectively and repeatedly, had been elected by delegate, not direct one member-one vote voting.

39.     On or about September 15, 2021, Defendants mailed a "Notice of Nominations and Election" to UPW members ("the mailed notice.").  Plaintiffs do

not know if Defendants mailed the notice only to members that Defendants had recorded were in good standing and, therefore, eligible to vote in the election. Plaintiffs do not know whether Defendants provided opportunity for UPW members recorded as not in good standing to contest or cure.

40.    Defendants published a "Notice of Nomination and Elections" in the September/October 2021 issue of the UPW Malama Pono newsletter and at some points in time, mailed the newsletter to UPW members and published the newsletter on the UPW website ("the newsletter notice").

41.    Defendants' notices included the following information: that members could submit nominations on-line from September 16, 2021 at 12:00 a.m. until October 1, 2021 at 5:00 pm 12:00 a.m. and additional nominations could be made at a Officer Nominations Meeting conducted by videoconference on October 2, 2021; that eligible members could cast ballots on line or by telephone through the BallotPoint system from  November 13, 2021 at 9:00 a.m. until December 7, 2021 9:00 a.m. and that votes would be tallied at 10:00 a.m.; and that voting instructions would be mailed on or about November 12, 2021.

42.    Defendants and/or their agents sent an email to UPW members on December 3, 2021 inviting attendance, through videoconference, at a "UPW Results Announcement" event at 6:00 pm following the 10:00 a.m. vote tally on December 7, 2021.

43.     The election took place and concluded on November 7, 2021.

44.     Defendants and/or their agents subsequently thereafter announced that 10,855 UPW members were eligible to vote in the races for the three at-large State offices.  By corollary, Defendants recorded approximately 3,000 UPW members, some 23% membership, as ineligible to vote.

45.     Defendants and/or their agents announced that of the 10,855 UPW members eligible to vote in the at-large races, that 770 members voted in the election of State Director, 716 members voted in the election of State President, and 713 members voted in the election of State Secretary-Treasurer.

46.     Defendants' nominations and election notices contained information about the possibility of run-off elections in the event a candidate would not receive a majority of votes cast, in which case run-off election voting instructions would be mailed to members on or about Friday, January 7, 2022; that voting would open on January 8, 2022 at 9:00 a.m. and close on February 1, 2022 at 9:00 a.m., and that votes would be tallied at 10:00 a.m.

47.     On December 7, 2021, Defendants and/or their agents announced that the runoff election will take place in the three at-large State offices races, two Delegate office races, and one Unit office race.  Defendants project that run-off election voting packets will be prepared on or about December 27, 2021 to January 7, 2022.

<u>Plaintiff Alton K. Nosaka</u>

48.    Mr. Nosaka has been and is a UPW member in good standing. He first became a UPW member in 1997, then worked as a UPW Business Agent from 2004 until 2016 when he returned to employment with Hawai`i County Department of Parks and Recreation in the position of Lead Painter where he remains employed today.

49.    Mr. Nosaka voted in the first election.

50.    Mr. Nosaka was a candidate for elected office in the first election and is a candidate in the run-off election.

<u>Plaintiff Eric M. Sakazuki</u>

51.    Mr. Sakazuki has been and is a UPW member in good standing. He became a UPW member in 2013 and is employed by Kauai County Dept. of Parks and Recreation in the position of BC 03 Groundskeeper at the Wailua Golf Course.

52.    Mr. Sakazuki tried to vote and does not know if he did vote because he did not receive a confirmation of vote.

<u>Plaintiff Gordon K. Leslie</u>

53.    Mr. Leslie has been and is a UPW member in good standing. He became a UPW member in 1986 and is employed by the State of Hawai`i Dept. of Public Safety in the position of Adult Corrections Officer, Lieutenant, at Halawa Medium Security Prison located on Oahu.

54.   Mr. Leslie voted in the first election.

55.   Mr. Leslie was a candidate for elected office in the first election and is not a candidate in the run-off election.

Plaintiff Rachel Krygier

56.   Ms. Krygier has been and is a UPW member in good standing. She has been a UPW member since 2008 and is employed by Hawai`i County Dept. of Environmental Management, Solid Waste Division at the Hilo Dump in the position of Lead Solid Waste Facility Attendant.

57.   Ms. Krygier voted in the first election.

58.   Ms. Krygier is Mr. Nosaka's designated election Observer.

Plaintiff Richard Okuda, Jr.

59.   Mr. Okuda has been and is a UPW member in good standing. He has been a UPW member since 1987 and is employed by Kauai County Dept. of Water Supply in the position of Automotive Mechanic.

60.   Mr. Okuda voted in the first election with the assistance of a third party.

61.   Mr. Okuda was a candidate for elected office in the first election and is not a candidate in the run-off election.

62.   Mr. Okuda appointed UW member Myron Borge his observer.

**Class Allegations**

63.   Plaintiffs hereby incorporate by reference each of the preceding

paragraphs and allegations as if fully set forth herein.

64.     Pursuant to Rule 23, Federal Rules of Civil Procedure, as amended

(Fed. R. Civ. P.), Plaintiffs bring this action individually and in their representative

capacities on behalf of all others similarly situated. This action satisfies all

requirements of Fed. R. Civ. P. Rule 23, including numerosity, commonality,

typicality, fair and adequate representation, and predominance and superiority.

65.     Proposed Class members consist of one Class and one Subclass as follows:

Class: includes all individuals that were UPW Members on or about
September 15, 2021

Observer Subclass:  includes all Class members that were appointed
election Observers by candidates in the election

66.     The Class and Subclass classifications proposed within may be

amended in timely due course prior to certification by the Court as necessary and

appropriate.

67.     Numerosity  (Fed. R. Civ. P. 23(a)(1)).  Joinder of all Class members

is impracticable because the proposed members of the Class exceed 10,000

individuals collectively domiciled throughout the Hawaiian Islands.

68.     Commonality: (Fed. R. Civ. P. 23(a)(2)).  The questions of fact and law

herein are common to the proposed Class as a whole and include the following:

whether Defendants breached AFSCME's contract with UPW members; whether

Defendants violated UPW members the right to be informed; whether Defendants

violated UPW members the equal right to vote in the election; whether Defendants violated UPW members the right to vote in the election by secret ballot; whether Defendants failed to provide adequate safeguards to insure a fair election; and whether Defendant AFSCME can overcome the presumption that the Administratorship is invalid and in any event, whether the Administratorship should be terminated.

69.    Typicality:  Fed. R. Civ. P. 23(a)(3).  The claims of the representative Plaintiffs are typical of the claims of the proposed Class.  Plaintiffs and all other members of the proposed Class have sustained and continue to sustain the same and similar injuries arising out of and caused by Defendants' acts and omissions herein alleged.  Because Plaintiffs' claims are typical of the proposed Class, absent Class members are able to obtain relief in an economical and efficient manner through class action.

70.    Adequacy: Fed. R. Civ. P. 23(a)(4).  Plaintiffs, as Class representatives, will fairly and adequately protect the interests of the proposed Class.  Plaintiffs each have suffered adverse consequences as a direct result of Defendants' acts and omissions herein alleged.  Plaintiffs each have undertaken respective initiatives over the course of some 35 years advocating on behalf UPW members and generally, union members, that includes service as elected union officers: Mr. Nosaka has held the offices of UPW Division Vice President and UPW Unit Chief; Mr. Sakazaki is a former (elected) Business Agent for UNITE

HERE Local 5; Mr. Leslie has been and is a UPW Chief Steward; Ms. Krygier is a former UPW Chief Steward; and Mr. Okuda is a former UPW Chief Steward.  Like the members of the proposed Class, Plaintiffs are residents of Hawai`i, Maui, Honolulu, and Kaua'i counties. Plaintiffs' counsel is experienced and active litigating labor and employment causes of action in State of Hawai`i courts and before Hawai`i state and U.S. federal administrative agencies, providing representation for both union and nonunion workers seeking redress of injuries arising in and out of the course of employment, and has experience in this Court prosecuting labor union duty of fair representation and Age Discrimination in Employment Act causes of action.  Counsel zealously will prosecute the complaint herein on behalf of the proposed Class. Based on information and belief, neither Counsel or Plaintiffs have any conflicts of interest with other proposed Class members that would hinder Plaintiffs' or Counsel's representation of the proposed Class or prosecution of the causes of action herein.

71.    Fed. R. Civ. P. Rule 23(b)(2).  Plaintiffs are not aware of any facts, defenses, or counter-claims Defendants jointly or severally may allege and assert herein but, in any event, if forthcoming, Plaintiffs reasonably anticipate such facts, defenses, and counter-claims will be applicable to the proposed Class as a whole, so that the injunctive and declaratory relief sought within is appropriate to the proposed Class as a whole.  Defendants have acknowledged that Defendants must

administer the Administratorship and conduct the election according to the requirements of the International Constitution and federal law, and by their acts and omissions have declined to do so. Defendant AFSCME espouses the belief that "an injury to one is an injury to all" so if Defendants have facts, defenses, and counter-claims that may be brought based upon the facts and circumstances operative in the instant litigation, Defendant AFSCME has deemed such facts, defenses, and counter-claims as common to UPW members, in the inclusive.

72.    Fed. R. Civ. P. Rule 23(b)(3).  The questions of fact and law common to the proposed Class members predominate over any questions affecting only individuals and a class action is superior to other means for fairly and efficiently disposing of the claims herein alleged. Defendants have acknowledged that Defendants must administer the Administratorship and conduct the election according to the requirements of the International Constitution and federal law. The touchstone of Plaintiff's claims herein alleged categorically is the Rights of Union Members, in the inclusive. AFSCME espouses the belief that "an injury to one is an injury to all" so even if there are additional claims or causes of action that may be brought based upon the facts and circumstances operative in the instant litigation only in an individual capacity, AFSCME has deemed such injury, and by corollary, any relief granted, as common to members, in the inclusive. Plaintiffs and Counsel have no knowledge of any other litigation concerning this case and controversy already begun

by or against proposed Class members.  It is right and appropriate to concentrate litigation of the claims herein alleged in this Court because the Court has jurisdiction; venue is in this Court; and the prayer for injunctive relief includes Court appointment of a Special Master to supervise a do-over of the election and termination of the Administratorship.  Maintaining class status is preferable for achieving the desired results and is not expected to present any exceptional difficulties.

**Statement of Claims**

Against all named Defendants:

COUNT 1: Violation of Equal Rights to Vote
(29 U.S.C § 411(a)(1))

73.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

74.    Defendants and/or their agents mailed the election and voting notices to UPW members home addresses contained in the UPW membership list.

75.    Defendants did not update the UPW membership list prior to sending out the elections notice on or about November 12, 2021.

76.    All UPW members in good standing must be given an opportunity to vote directly for candidates to fill the offices that serve them.

77.    All UPW members must be afforded a reasonable opportunity to cast ballots.

78.    Defendants and/or their agents informed UPW members they could

vote on-line by or over the telephone.

79.    Defendants and/or their agents did not provide paper ballots for voting in the election.

80.    This is the first time in the experience of any UPW member living today that an election of UPW officers did not take place by vote cast on paper ballot.

81.    It is and has been customary for UPW members to vote in officer elections in person.

82.    The UPW Administrator coordinated collective bargaining agreement ratification voting by UPW Bargaining Units 1 and 10 in April 2021.  UPW members cast their ratification votes statewide in person at UPW Division union halls located in Hilo, Kahalui, Honolulu, and Lihue, Hawai`i.

83.    The large majority of UPW members have had no prior experience with voting in an election of any kind electronically on-line or over a telephone.

84.    Plaintiff Sakazaki tried to vote on line but did not receive a confirmation of vote so does not know if his votes were counted.

85.    Plaintiff Krygier tried entering the 40-character email address that was provided in the voting instructions on her phone's browser. Her connection was dropped approximately eight times before she believes she successfully was able to vote by using a different browser.

86.    Plaintiff Okuda was able to complete his on-line vote with the

assistance of his wife.

87.    Some UPW members do not have a computer, laptop, tablet, internet-enabled cell phone, or other device to obtain access the Internet.

88.    Voting by paper ballot is a method of voting that is common across all cultures over all recorded times.

89.    Many UPW members speak and write English as a second language.

90.    There are many UPW members that do not ask others for help for sense of shame.

91.    There are many UPW members that do not ask others for information for sense of shame.

92.    As a result of Defendants and/or their agents' acts and omissions in conducting nominations and voting exclusively electronically without providing alternative methods of making nominations and election choices, Defendants caused injury to Class members by denying them the ability to exercise their statutory and contractual equal rights to participate in the election of UPW's officers.

93.    Every day Defendants and/or their agents expend resources on the scheduled run-off election, Defendants are causing injury to Class members by denying them the ability to exercise their statutory and contractual equal rights to vote in the election of UPW's officers.

COUNT 2:  Violation of the Right to Vote By Secret Ballot
(29 U.S.C. § 481(b))
(29 U.S.C. § 463)

94.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

95.    Local labor organizations like UPW elect officers by secret ballot.

96.    A secret ballot is a ballot whose voter cannot be identified by any person with the voter's choices and is never a proxy.

97.    Mr. Okuda had difficulty voting on line and only was able to complete his vote by asking his wife to take over.

98.    Many Class members like Mr. Okuda could not cast their ballots without the presence and participation of a second party.

99.    These acts and omissions by Defendants and/or their agents are contrary to statutory law and the International Constitution, and have resulted in and caused injury to Class members by depriving them of both ability and the right to vote in secret.

COUNT 3:  Failure to Provide Adequate Safeguards to Insure a Fair Election
(29 U.S.C. § 481(c))

100.   Plaintiffs hereby incorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

101.   Candidates in the UPW election had a right to appoint and have an observer at the polls and the counting of ballots.

102.    All observers have some absolute rights, including the right to be present in places where ballots are being prepared, to be present in the room when electronic voting materials are being prepared, the right to observe the counting of paper or electronic ballots, and the right to maintain their own tabulation as ballots are counted.

103.    At no time in the instant were any observers in any place where ballots were prepared.

104.    At no time in the instant were any observers present in the room where electronic voting materials were prepared.

105.    At no time in the instant did any observers observe the counting of the electronic ballots or keep their own tabulations.

106.    Up until this election, it was customary for UPW election observers to be present at the location where ballots were cast and votes were counted.

107.    Defendant and/or their agents did not conduct the election with member observer oversight at any stage of ballot and electronic voting materials preparation, counting, or tabulation, in violation of statutory law and the International Constitution, resulting in and causing injury to Class members by depriving Class members their equal right to vote in and be governed by results of fair elections.

COUNT 4:  Violation of Rights to be Informed
(29 U.S.C § 415)

108.   Plaintiffs hereby incorporate by reference each of the preceding
paragraphs and allegations as if fully set forth herein.

109.   Defendants are required to inform UPW members concerning the
provisions of the Labor Management Relations Disclosure Act.

110.   Defendants are required to make available to all UPW members a copy
of the Administrator's first thirty days report, semi-annual, and annual reports
required to be submitted to the U.S. Secretary of Labor that disclose the financial
and operating conditions of UPW under the Administratorship.

111.   As of the date stated below, Defendants have not made available to UPW
members any such Administrator reports submitted to the Secretary of Labor.

112.   The Administrator is required to submit complete monthly reports of
the Administrator's actions and of the affairs of UPW to UPW members.

113.   As of the date stated below, the administrator has not submitted to
UPW members complete monthly reports of her actins and the affairs of UPW to
UPW members.

114.   The AFSCME Constitution contains Appendix E "Policy for
Conducting Audio and/or Video teleconference Meetings of a Subordinate body."
One such policy (enumerated #4) concerns giving notice to participants on "how
each member is to participate."

115.   Defendants and/or their agents did not prepare UPW members for electronic nominations and voting.

116.   The 4-page mailed and 2-page newsletter elections notices each contained a single sentence in 10-point font informing UPW members that the vote would be by electronic means only.

117.   Defendants scheduled a "Candidate's Forum" whereby candidates for election to State and Division executive offices could give 3 minute live or recorded campaign statements in a videoconference scheduled for Saturday, November 13, 2021, at 9:00 a.m.

118.   The Administrator conducted the Candidate's Forum as scheduled.

119.   The Administrator was not prepared or sufficiently skilled to host the Candidates Forum.

120.   Some candidates attempted but could not access the Candidate's Forum.

121.   Defendants and/or their agents released information about the Candidate's Forum only through email.

122.   Defendants possess email addresses for approximately only 40% UPW's membership.

123.   Every candidate in the election had and has the right once within 30 days prior to the election to inspect the UPW membership list.

124.   Defendants did not inform UPW members that candidates have a right

to inspect the UPW membership list once within 30 days before the election.

125.    The prohibition against the use of employer money to support the candidacy of a particular candidate in the election is not restricted to employers with whom UPW has a collective bargaining agreement because "employer'" means any employer or any group or association of employers engaged in an industry affecting commerce[.]

126.    Candidates are prohibited from receiving any discounts or in-kind contributions from any employer unless such discounts and in-kind contributions are made available to the general public.

127.    The prohibition against the use of employer money to support the candidacy of a particular individual includes the distribution of candidate campaign literature on the employer's premises, unless all candidates in the race are afforded the same opportunity.

128.    The prohibition against the use of union money in officer elections does not prohibit AFSCME from using UPW funds to pay for the costs of publishing and distributing candidate campaign materials on an equal and impartial basis.

129.    Prior to May 1, 2020, it was UPW's long-standing practice to publish information and pictures of candidates for elected union office in the Malama Pono newsletter. Titled "Meet Your Candidates," each candidate was afforded the same

amount of space in which the following information appears:  name, photo, job title, jurisdiction, department, division/workplace, bargaining unit, and responses to the questions, 1) Why are you running for office?, and 2) What are your goals?" (11)

130.   In the months prior to the administration dating back at least as far as the fall of 2016, UPW mailed the Malama Pono newsletter to UPW members every two months, such that UPW regularly communicated by mail with its members by mail, through the newsletter, at a minimum of 6x/year.

131.   This year, under administratorship, UPW members were mailed at most 2 issues of Malama Pono in 2021.

132.   Prior to May 20, 2021, it was customary for candidates for election to UPW Division officer positions to appear in person before respective UPW division members during work hours on the employer's premises in "Section 8" meetings to state their respective cases and qualifications for office.

133.   Defendant AFSCME's Local Union Elections Manual advises local unions to post notices on bulletin boards concerning nominations and elections because "no mailing list is ever 100% accurate."

134.   Defendants did not undertake actions to post elections and voting notices on UPW bulletin boards.

135.   Defendants did not provide candidates in the election a written set of rules, regulations, and guidelines for campaigning in the election.

136.   Defendants and/or their agents' actions resulted in a suppression of UPW members' right to vote and ability to vote.

137.   Defendants violated Class members' statutory and contractual rights to be informed about the financial and operational status of the Administratorship; the rights of candidates to inspect the membership list prior to the election; the prohibitions on candidate campaign activities; and how to participate electronically in e-voting in and the Candidates' Forum, resulting in and causing injury to Class members rights to fully participate in the election, to make informed decisions about the candidates that will represent them as UPW officers, and to make informed decisions about the future of UPW under a protracted Administratorship.

<u>COUNT 5:  Breach of Contract</u>
(29 U.S.C § 185(a))

138.   Plaintiffs hereby incorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

139.   The UPW Constitution and the Private Sector Division By-Laws are contracts between UPW and Class members.

140.   The UPW Constitution and Private Sector Division Bylaws and the International Constitution are contracts between labor organizations.

141.   The International Constitution is a contract between AFSCME and UPW.

142.   Under the Administratorship, the International Constitution is contract between AFSCME and Class members.

143.   Defendants and/or their agents breached their contract with Class members by failing to conduct the election in accordance with the International Constitution and as a result have caused injury to Class members by depriving Class members equal rights to vote, depriving Class members of the right to vote by secret ballot, and failing to ensure safeguards for a fair election.

144.   Defendants breached their contract with Class members by failing timely and properly to terminate the Administratorship in accordance with the International Constitution and as a result have caused and continue to cause injury to Class members by depriving them the right to democratically govern and control UPW.

<u>COUNT 6:   The Administratorship is Invalid and Should be Terminated</u>
(29 U.S.C § 464(c))

146.   Plaintiffs hereby incorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

147.   Defendant AFSCME placed UPW under administratorship on May 1, 2020.

148.   As of the date stated below, the Administratorship is not terminated.

149.   Defendants failed and continue to fail to timely terminate the Administration.

150.   The purposes for which the Administratorship was established have been accomplished.

151.   Defendants' and/or their agents' failures to conduct the election in

accordance with law and contract is causing additional delay in the termination of the Administration.

152.   Every day the Administratorship is not terminated, Class members suffer new injuries as a result of Defendants' failure to return UPW to democratic governance and control by Class members.

**Prayer for Relief**

WHEREFORE**,** Plaintiffs pray for relief as follows:

1.     For Certification of the proposed Class;

2.     For Entry of Judgment declaring:

a)  the election void, ab initio;

b)  Defendants violated the Class members' equal rights to vote, rights to be informed, and right to vote by secret ballot;

c)  Defendants failed to provide adequate safeguards to insure a fair election;

d)  Defendants breached Defendant AFSCME's contract with Class members; and

e)  Defendants have not defeated the presumption that the Administratorship is invalid and for all the foregoing reasons it is appropriate, right, and just that the Administratorship is terminated;

3.     For an order enjoining Defendants from making or committing to

expenditures associated with the run-off election; and voiding election results;

    4.    For an order appointing a Special Master for the purposes of:

        a)  conducting a lawful election of UPW officers by paper ballot; and

        b)  supervising termination of the Administratorship; and

        c)  providing that the Special Master shall consult with the parties

named herein; and that Special Master fee and costs shall be paid by Defendants;

    5.    For an order terminating the Administratorship;

    6.    For an award to Plaintiffs of costs and reasonable attorney fees; and,

    7.    For such other relief as the Court deems appropriate and just in the

premises.

DATED:    Kailua-Kona, Hawai`i, December 19,2021

                /s/ Georgette Anne Yaindl
                GEORGETTE ANNE YAINDL
                Attorney for Plaintiffs
                ALTON K. NOSAKA; ERIC M.
                SAKAZAKI; GORDON K. LESLIE;
                RACHEL KRYGIER; and RICHARD
                OKUDA, JR., each individually and on
                behalf of all others similarly situated